IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JASON DEAN SHORT                                                                    PLAINTIFF

v.                                          Civil No. 4:16-cv-04080

NURSE SHANNON TALLANT;
DR. ANGIE MARTIN; JAIL
ADMINISTRATOR CHRIS WOLCOTT;
and DETENTION OFFICER ANGELA
CROSS                                                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Jason Dean Short, under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court is Defendants' Motion for Summary Judgment.  ECF No. 31.  After careful consideration, I make the following Report and Recommendation.

## BACKGROUND

Plaintiff filed his Complaint on August 30, 2016, alleging Defendants were deliberately indifferent to his serious medical condition during his incarceration at the Sevier County Detention Center ("SCDC").  ECF No. 1.  Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – Grimes Unit, in Newport, Arkansas.  Plaintiff is suing Defendants Shannon Tallant, Dr. Angie Martin, Chris Walcott and Angela Cross in their individual and official capacities.  Plaintiff is seeking compensatory damages.

Defendants Tallant, Martin, Wolcott and Cross filed a summary judgment motion on June 8, 2017, stating they are entitled to judgment as a matter of law because: 1) there is no basis for

1

official capacity liability; 2) Defendants are entitled to the protections of qualified immunity; and 3) Defendants were not deliberately indifferent to Plaintiff's serious medical needs. On June 21, 2017, Plaintiff filed his Response to the motion for summary judgment. ECF No. 38.

Plaintiff was booked into the SCDC on March 18, 2016 and was released to the custody of the ADC on April 19, 2017.[1] ECF No. 38. During the time in question Plaintiff was a pre-trial detainee. Plaintiff claims Defendants failed to provide proper medical treatment to him because they denied him an x-ray or MRI, provided him treatment without actually seeing him, and denied him his "script" for a double mat.[2] ECF Nos. 1, 14.

In particular, Plaintiff's Complaint states Defendant Martin "has not made an attempt to x-ray or MRI my back. She has gave me a double matt script and put me on meds that ain't helping which won't stop my back from hurting." Plaintiff claims Defendant Wolcott "denies my double mat script because he says I have a new mat Well, he is going against doctor orders which causes my back pain." As to Defendant Tallant, Plaintiff alleges "instead of getting the Doctor to get x-rays they diagnose my back problems with-out proper treatment. Says he can not provide me with my double mat because Mr. Wolcott said No. which cause my disc in back bad pain." With respect to Defendant Cross, Plaintiff states she "handed out new mats and I stated I had double mat script and she stated she knows but she had to take it because Mr. Wolcott said to. Disc in back are in pain." ECF No. 1.

---

[1] Based on the Affidavit of Defendant Martin (ECF No. 33-4) it appears Plaintiff was also incarcerated at the SCDC back in July of 2015 for some extended period of time.

[2] In Plaintiff's Response to Defendants summary judgment motion he claims Defendant Tallant did not take his blood pressure and did not take the proper "measures to get my internal organs checked out" when I had blood in my stool". (ECF No. 38). These allegations were not mentioned in Plaintiff's Complaint (ECF No. 1) or Plaintiff's Supplement to Complaint (ECF No. 14) and are therefore not properly before the Court.

Defendant Martin was the physician who provided medical care to inmates in the SCDC during the time at issue in this case. According to Defendant Martin's affidavit, Plaintiff was first seen by her on July 29, 2015. That day Plaintiff reported he was suffering from chronic back pain and herniated discs from an injury he suffered prior to incarceration at the SCDC. At the time, Plaintiff was not taking any medication for these conditions. ECF No. 33-4. Defendant Martin prescribed Plaintiff Naproxen in July 2015 for his back pain. Plaintiff was placed on Paxil for anxiety on August 26, 2015, when he first reported anxiety problems to Defendant Martin. ECF No. 33-4.

On March 30, 2016, Defendant Martin saw Plaintiff for low back pain and anxiety. She started Plaintiff on Valium twice a day in addition to a muscle relaxer to help with a muscle spasm found upon assessment. Defendant Martin saw Plaintiff again on April 27, 2016, because Plaintiff wanted to discontinue Paxil due to feeling "weird" and asked to have the Valium increased because he needed medication more than once per day. Defendant Martin discontinued the Paxil and prescribed Prozac daily. Plaintiff refused Prozac because he only wanted Valium. ECF No. 33-4. On May 4, 2016, Defendant Martin saw Plaintiff for nightmares after starting Prozac. Plaintiff asked Defendant Martin to increase his Valium to three times per day. ECF No. 33-4. Defendant Martin discontinued the Prozac, prescribed Zoloft and increased Plaintiff's Valium to three times per day for treatment of chronic back pain and muscle spasms.

On May 7, 2016, Plaintiff went to the DeQueen Medical Center for an x-ray of his right hand because he had hit a wall and was experiencing pain. The x-ray did not show any evidence of acute fractures or dislocations. Plaintiff was told to wear an ace wrap for ten days, follow up with the primary care doctor as needed, and was prescribed Ibuprofen for pain. ECF No. 33-4. Defendant Martin again saw Plaintiff on May 26, 2016, for back pain. He was prescribed Zanaflex

and Neurontin because the pain was not likely muscle related.  Defendant Martin also recommended Plaintiff have an "extra mat if any available."  ECF No. 33-6, pgs. 23-27. On June 3, 2016, Defendant Martin was contacted by the SCDC because Plaintiff was having migraines. Plaintiff was prescribed Imitrex.  On June 8, 2016, Defendant Martin again saw Plaintiff.  He claimed he was still having migraines and requested an increase in Valium to four times per day. Plaintiff's Imitrex and Valium were increased in accordance with his request.  ECF No. 33-4.

Defendant Martin saw Plaintiff on June 15, 2016, for nasal congestion and a cough. Plaintiff was prescribed Amoxicillin to treat bronchitis. At that time Plaintiff's Naproxen was discontinued and he was prescribed Mobic and the Neurontin was increased to 300 mg four times per day. On July 13, 2016, Defendant Martin saw Plaintiff in response to his request for an increase in Valium.  At that time Plaintiff asked Defendant Martin for an extra mat due to the severity of pain when he would lay down.  Defendant Martin informed Defendant Tallant Plaintiff was to have an extra mate for back pain if one was available.  ECF No. 33-4.

On August 31, 2016, Defendant Martin saw Plaintiff for dizziness.  Plaintiff requested an MRI and stated his back pain had increased.  Clonidine was administered for Plaintiff's blood pressure and he was started on a daily dose of Zestoretic.  Defendant Martin recommended the jail staff monitor Plaintiff's blood pressure.  Plaintiff was prescribed Tylenol for pain as needed, and his Gabapentin and Valium were increased.  Defendant Martin noted she was "ok with setting up an MRI, but it was not medically necessary at this time because Inmate Short was receiving proper treatment for chronic low back pain and no neurological symptoms were present."  ECF No. 33-4.

On September 14, 2016, SCDC staff informed Defendant Martin that Plaintiff had been seen by the emergency room after he had fallen and that an x-ray had been done.  Defendant Martin

4

reviewed the x-ray results and concluded they were normal.  Defendant Martin then set up a plan to wean Plaintiff off of Valium to prevent withdrawal/seizures.  Defendant Tallant had informed Defendant Martin that Plaintiff was refusing medications when the emergency room discontinued his Valium.  Defendant Martin instructed Defendant Tallant that Plaintiff had a right to refuse his medications but she should continue to offer them to him.  ECF No. 330-4.

On September 21, 2016, Defendant Martin saw Plaintiff for back pain, migraines, irregular heartbeat, and insomnia.  Plaintiff demanded an MRI.  Defendant Martin then reviewed Plaintiff's medication log which revealed Plaintiff refused "maintenance medication for treatment of back pain, Gabapentin, and Mobic."  Plaintiff had also refused to take his Zestoretic.  Defendant Martin advised Plaintiff if he refused his medication he would have back pain and because he was refusing his medication Defendant Martin would not prescribe additional medication.  According to Defendant Martin's affidavit, Plaintiff then became angry and stated "another doctor shouldn't be able to take me off my Valium."  ECF No. 33-4.  Defendant Martin explained to Plaintiff because he had fallen and requested an emergency room visit, the emergency room physician could alter his medications.

On September 28, 2016, Defendant Martin again saw Plaintiff and he explained he had resumed taking his medications but reported he was now having headaches and back pain which kept him from sleeping.  As a result Defendant Martin scheduled Plaintiff for an MRI.  Plaintiff was taken to the Howard Memorial Hospital for his MRI on October 3, 2016.  After reviewing the results of the MRI, Defendant Martin advised Plaintiff on October 5, 2016, he had a "mild left side neural foraminal narrowing at L5-S1 secondary to small left foraminal disc protrusion."  Defendant Martin then explained to Plaintiff "the proper treatment for his back condition would be to continue

Neurontin and that neurosurgery would not evaluate until it was moderate to severe." ECF No. 33-4.

On October 12, 2016, Plaintiff told Defendant Martin he had bleeding from his mouth and one nose bleed, but no sinus problems. Plaintiff denied any trauma to his mouth or throat and was unsure where the bleeding was coming from. Plaintiff also discussed his depression. Plaintiff's Zoloft was increased and he was started on Klonopin. On October 17, 2016 Plaintiff was prescribed Protonix. Then on November 2, 2016, Defendant Martin responded to a grievance submitted by Plaintiff requesting Valium because Klonopin was not helping for his anxiety and nerves. Defendant Martin did not prescribe Valium based on the emergency room doctor's observation that Valium could have contributed to Plaintiff's fall back in September. Instead, Defendant Martin increased Plaintiff's dosage of Klonopin for his increased anxiety. ECF No. 33-4.

Plaintiff was seen again by Defendant Martin for a rash on his neck, back, and abdomen, continued headaches, and anxiety. Plaintiff again requested medication for his back and an extra mat. Plaintiff was started on a burst of steriods for an allergic reaction, prescribed Topimax at bedtime to control migraines, and his Gabapentin and Klonopin were increased. Defendant martin again indicated she had previously authorized an extra mat if one was available. ECF No. 33-4. Plaintiff was seen on four more occasions by Defendant Martin for various conditions unrelated to his back with the prior to his transfer to the ADC.

During his incarceration in the SCDC, Plaintiff filed several grievances stating he needed a double mat. According to the affidavit of Defendant Wolcott, the SCDC has never had any extra mats for inmates. He states there are 74 beds at the SCDC and there are 74 mats available. ECF No. 33-1. In July of 2016 new mats were purchased for inmates at the SCDC. The new mats were

four inches thick - the same thickness as two of the old SCDC mats. Although Defendant Martin informed Plaintiff he could have an extra mat if any were available, she did not "prescribe" Plaintiff an extra mat.  ECF No 33-6, pgs. 23-27.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

1.  <u>Official Capacity Claim</u>

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants Tallant, Martin, Wolcott, and Cross is treated as a claim against Sevier County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Sevier County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That

> Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs by failing to provide him specific medical treatment he requested including a double mat he claims was prescribed to him by Defendant Martin. ECF No. 1. In his Response to the summary judgment motion Plaintiff states he is suing Defendants in their official capacity because "It is policy of the SCDC on page 43 Definition; any perceived life or health threatening condition, including but not limited to; "severe bleeding" serious breathing difficulties, head injury, "severe pain" onset of unusual behavior or severe burns. Also, policy to prohibit from restrict a detainees access grievances. Due to this my VIII, IX, XIV Amendments were deprived of." ECF No. 38, p. 23. Although it is difficult to decipher, it appears Plaintiff is alleging Defendants failed to comply with an existing policy of the SCDC. He is not alleging the policy itself is unconstitutional. Instead Plaintiff points to isolated incidents of various medical treatment, or the lack thereof, and instances where some of the Defendants informed him there were not enough mats for him to have two. Plaintiff has simply not submitted any evidence to demonstrate an unconstitutional policy or custom of Sevier County contributed in any way to a violation of his civil rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

### 2. Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim,

Plaintiff must prove Defendants Tallant, Martin, Wolcott and Cross acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Based on the summary judgment record, I am convinced none of the Defendants ignored or refused to treat Plaintiff's back condition.[3] Defendant Martin and Tallant treated Plaintiff for back pain, anxiety, depression, migraines, congestion, irregular heartbeat, and insomnia throughout his incarceration in the SCDC. Plaintiff was seen by Defendant Martin seventeen (17) times and was taken to outside medical care providers three (3) times between March 18, 2016 and

---

[3] The Court will assume for purposes of ruling on the summary judgment motion that Plaintiff's back pain is a serious medical condition.

April 19, 2017. Although Plaintiff requested an MRI on August 31, 2016, Defendant Martin did not believe it was medically necessary at that time. Two weeks later after falling, Plaintiff was given an x-ray. Defendant Martin reviewed the x-ray and determined it was normal. On September 21, 2016, Defendant Martin saw Plaintiff for numerous conditions from which Plaintiff was allegedly suffering including his back pain. At this time, Plaintiff was refusing to take his medications. After a visit with Plaintiff on September 28, 2016, Defendant Martin scheduled Plaintiff for an MRI. Plaintiff was taken for the MRI on October 3, 2016. Defendant Martin reviewed the results of the MRI and concluded the proper treatment would be to continue Neurontin and that surgery was not necessary at that time. ECF No. 33-4.

Plaintiff also claims Defendants Cross, Wolcott and Tallant denied him adequate medical care because they denied him his "script" for a double mat. First, none of these Defendants ignored or refused to enforce a prescription written for Plaintiff for a second mat because there was no such prescription. Defendant Martin simply recommended Plaintiff be given an "extra mat if any available." ECF No. 33-6, pgs. 23-27. None of the Defendants denied Plaintiff a second mat. It is clear there were simply no extra mats available for Plaintiff to use during his incarceration.

The course of treatment Plaintiff received while incarcerated at the SCDC demonstrates he was well cared for and seen numerous times. The fact Plaintiff may have disagreed with the medications he was prescribed or the treatment he was provided does not demonstrate deliberate indifference by any Defendant. "[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *McClain v. Howard,* 2015 WL 6123063 (W.D. Ark. Sept. 21, 2015) (citing *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997). What medication should be prescribed clearly

involves an exercise of medical judgment. *Hathorn v. Mullins,* 2015 WL 1119984 (W.D. Ark. March 12, 2015) (what medications should be prescribed involves the exercise of professional judgment and does not constitute deliberate indifference).

Plaintiff has failed to show any Defendant was deliberately indifferent to his medical needs. Consequently, Plaintiff's claims against Defendants for denial of medical care fail as a matter of law.

      3.   Condition of Confinement

Although Plaintiff phrased his claim relating to the Defendants' denial of a second mat in terms of inadequate medical care, the Court will also address the issue as a condition of confinement claim.   "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As a pretrial detainee, Plaintiff is entitled to "'at least as great' protection as that afforded to convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.ED.2d 605 (1983).  "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris,* 601 F.3d at 809.  However, the identical deliberate-indifference standard as

that applied to conditions of confinement claims made by convicted inmates is applied in determining whether a pretrial detainee's constitutional rights have been violated. *Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006); *Crow v. Montgomery*, 403 F.3d 598 (8th Cir. 2005).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The law clearly indicates a pretrial detainee cannot be punished. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted). *See also Bell,* 441 U.S. at 539. Furthermore, courts are not concerned with *de minimis* levels of imposition on inmates. *Id.*

In this case Plaintiff has not shown his living conditions denied him of the minimal measure of life's necessities nor has he demonstrated the lack of a second mat posed a substantial risk of serious harm to his health. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). At all times Plaintiff had access to a mat for his use. Sometime in July of 2016, the SCDC purchased new mats for the inmates that were twice as thick as the previous mats. Consequently, I find any discomfort Plaintiff allegedly suffered from only having one mat to sleep on to be *de minimis,* and as a result

does not implicate the Constitution.  *See Smith,* 87 F.3d at 268.  Accordingly, Plaintiff's condition of confinement claim relating to denial of a second mat fails as a matter of law.

### CONCLUSION

For the reasons stated, I recommend Defendants Tallant, Martin, Cross and Wolcott's Motion for Summary Judgment (ECF No. 31) be **GRANTED** and all claims against them be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 10th day of July 2017.**

/s/    Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE